1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              CENTRAL DISTRICT OF CALIFORNIA

10   MARIA HERNANDEZ,                    )   Case No. CV 05-4043 PJW
                                         )
11             Plaintiff,                )
                                         )   MEMORANDUM OPINION AND ORDER
12        v.                             )
                                         )
13   MICHAEL J. ASTRUE,                   )
     Commissioner of the                 )
14   Social Security Administration,     )
                                         )
15             Defendant.                )
     _____)
16

17                              I. INTRODUCTION

18        Before the Court is Plaintiff's appeal of a decision by Defendant

19   Social Security Administration ("the Agency"), denying her

20   applications for Disability Insurance benefits ("DIB") and

21   Supplemental Security Income benefits ("SSI").  Plaintiff claims that

22   the Administrative Law Judge ("ALJ") erred in 1) failing to properly

23   consider the opinions of her treating physicians; 2) determining that

24   her testimony was not credible; and 3) failing to determine whether

25

26

27

28

she could "sustain work activity."[1]  (Joint Stip. at 8-17, 24-28, 36-38.)  For the reasons explained below, the Agency's decision is affirmed.

## II. BACKGROUND

A.   The Proceedings Before the Agency

On November 24, 1998, Plaintiff applied for SSI and DIB, claiming that she had been disabled since September 30, 1998, due to low back pain.  (Administrative Record ("AR") 62, 88, 252.)  After the Agency denied the applications initially and on reconsideration, Plaintiff appeared with counsel at a hearing before an Administrative Law Judge ("ALJ") on May 17, 2000, and testified.  (AR 62, 66, 319-42.)  On June 20, 2000, the ALJ issued a decision denying her applications.  (AR 22-28.)  Following the Appeals Council's denial of her request for review, Plaintiff filed an action in this court.  The parties subsequently stipulated to a remand to the Agency for further consideration of Plaintiff's credibility and the treating doctor's opinion.  (AR 356-64.)

On remand, the ALJ held another administrative hearing, at which Plaintiff again appeared with counsel and testified.  (AR 495-508.)  On July 25, 2002, the ALJ issued a decision, again denying Plaintiff's applications.  (AR 267-72.)  Plaintiff appealed to the Appeals Council, which remanded the case to a different ALJ with instructions to develop the record with respect to Plaintiff's treating doctor's opinion, evaluate Plaintiff's subjective complaints, and further consider Plaintiff's residual functional capacity.  (AR 291-93.)

---

[1]  The Court has presented Plaintiff's claims in the order that it will address them herein.  It is not the same order that Plaintiff raised them in the Joint Stipulation.

Thereafter, a third administrative hearing was held before a different ALJ. (AR 511-37). This time, the ALJ found that Plaintiff was disabled beginning January 1, 2004, but not before then. (AR 297-313.) Because the ALJ determined that Plaintiff had acquired sufficient quarters of coverage to remain insured through only December 31, 1998, he found that she was not entitled to receive DIB, but that she was eligible to receive SSI beginning January 1, 2004.[2] (AR 298-99.) Thereafter, Plaintiff filed the instant action, challenging the ALJ's finding that she was not disabled before January 1, 2004.

B.  **Summary of the Medical Evidence**

Plaintiff developed a hernia in 1985, and underwent a ventral herniorrhaphy in December 1996, to repair it. (AR 206-07.) On September 22, 1998, Plaintiff complained of a sudden onset of abdominal pain and was treated at the emergency room at the Methodist Hospital of Southern California, where she was diagnosed with incarcerated hernia versus strangulated bowel. (AR 190-92.) Against

---

[2] Plaintiff contends that the ALJ erred when he found that her date last insured was December 1998 and, as proof, she contends "it has been stated throughout the case that she was last insured 12/99." (Joint Stip. at 3.) Accordingly, Plaintiff argues that she is eligible for DIB if she can establish she was disabled on or before December 31, 1999. (Joint Stip. at 3.) The Court rejects this argument. Although the first ALJ stated that Plaintiff last met the insured status requirements on December 31, 1999, (AR 23), which finding may have been based on an unsupported notation by a reviewing state agency doctor, (AR 69), that date was not based on any evidence appearing in the record, nor was it mentioned again. After the issue of Plaintiff's date last insured was raised at the third administrative hearing, (AR 514-16), the ALJ determined that the correct date was December 31, 1998. (AR 299.) This finding is supported by substantial evidence in the record in the form of earnings calculations, (AR 433-34, 439, 443-44), and Plaintiff provides no basis for disturbing it.

medical advice, Plaintiff went home.  (AR 188.)  On September 30, 1998, she underwent a hernioplasty and lipectomy in Sonora, Mexico. (AR 161.)  On December 12, 1998, Dr. Gustavo Angulo Sanchez in Sonora reported that she "presents spondylolisthesis of the L4, L5 stadium 1" and opined that she was, therefore, "incapacitated for an indefinite period of time, for the purposes of performing physical activities such as lifting, pushing, or abdominal flexion."  (AR 164.)

The following month, on January 25, 1999, Dr. Gabriel Fabella, a consultative physician, examined Plaintiff and, despite noting mild limitations in her back, determined that she could lift and carry twenty pounds occasionally and ten pounds frequently, and could stand and walk for about six hours in an eight-hour workday.  (AR 145-49.) On March 1, 1999, state agency reviewing physician Dr. Wallace Campbell endorsed these limitations, and added that Plaintiff could sit for six hours in an eight-hour workday and could frequently climb, balance, kneel, crouch, and crawl.  (AR 150-57.)

On March 29, 1999, Plaintiff saw Dr. Gary Moscarello for a "second opinion."  (AR 233.)  He noted her complaints of pain in her lower back and right thigh, but also observed that she "walks around the room [and sat down] . . . readily."  (AR 233.)  Dr. Moscarello found that x-rays showed spondylolisthesis at L5, L6, but opined that "she is not having symptoms . . . that would require surgical intervention or that surgical intervention would help," and stated that she should lose weight and exercise.  (AR 234.)  Dr. Moscarello also noted that test results indicated that she had carpal tunnel syndrome in her right hand.  (AR 234.)

On October 13, 1999, Plaintiff was involved in a car accident and suffered a contusion to her right thigh and an abrasion to her left

leg.  (AR 181.)  She complained of lower back pain.  X-rays of her lumbosacral spine showed a transitional lumbar vertebrae and "marked degenerative facet joint changes," but did not show spondylolisthesis.  (AR 181, 186.)

On October 18, 1999, Plaintiff was evaluated by Dr. Stephen Roberts in connection with her accident.  (AR 581-89.)  Dr. Roberts noted multiple areas of spasm in Plaintiff's cervicothoracic and lumbosacral spine, and hematomas in her right and left thighs.  (AR 584.)  In follow-up visits between November 1999 and February 2000, Plaintiff complained of pain in her neck, trapezius, low back, and knee.  Dr. Roberts noted diminished range of motion of the cervical and lumbosacral spine and paracervicothoracic and paralumbar spasm.  (AR 587-88.)  Plaintiff was referred for physical therapy, which she underwent between November 1999 and February 2000.  (AR 167-80, 587, 588.)  Her prognosis was said to be "fair."  (AR 588.)

Plaintiff was also referred to orthopedic surgeon Frank Sorrentino.  (AR 172.)  On November 29, 1999, Dr. Sorrentino noted her complaints of cervical, dorsal, low back, left shoulder, and right thigh pain, and tingling and numbness of three fingers of her right hand.  (AR 225.)  He observed that she walked with a limp.  (AR 226.)  Plaintiff had a spasm in her trapezius, pain in her left shoulder, and a positive left straight leg raising sign.  (AR 227.)  Dr. Sorrentino also noted positive right Tinel's and Phalen's signs for carpal tunnel syndrome.  (AR 227.)  He diagnosed cervical, dorsal, and lumbosacral sprains, left rotator cuff tendinitis, a bulging disc at L5-S1, and a hematoma on the right thigh.  (AR 228.)  He recommended an MRI of the low back.  (AR 228.)  He concluded that Plaintiff "will be a candidate for Social Security Disability as I do not feel she can continue on in

5

 1   her employment cleaning houses.  Even a sedentary job will be
 2   difficult for this patient if she can be so trained."  (AR 228.)

 3        On December 27, 1999, Plaintiff visited Dr. Sorrentino again, at
 4   which time he noted that an MRI of Plaintiff's lower back indicated
 5   mild disc dissection at L3-L4, but did not mention the
 6   spondylolisthesis diagnosed by Dr. Moscarello.  (AR 230.)  Dr.
 7   Sorrentino opined that Plaintiff "has low back pain with any bending
 8   or lifting, prolonged standing.  She cannot squat or kneel.  She
 9   cannot bend or lift."  (AR 230.)  He recommended that she lose at
10   least 20-25 pounds, continue with physical therapy, and have a custom
11   orthopedic corset fitted.  (AR 230.)  He concluded that she would need
12   to be trained in "light work as she will not be able to tolerate
13   occupations requiring prolonged standing for more than one hour,
14   sitting for more than [two] hours at a time.  She will most likely be
15   retrained into a secretarial type of work."  (AR 230.)

16        On February 28, 2000, Plaintiff returned to Dr. Sorrentino.  He
17   noted that Plaintiff had not obtained an orthopedic corset because she
18   could not afford one.  He reported that Plaintiff continued to
19   complain of pain in her neck, left shoulder, back, and right thigh,
20   though she told him that the pain in her back had improved with
21   therapy and medications.  (AR 549.)  After an injection in her left
22   shoulder, Plaintiff was given refills of Tylenol with codeine,
23   released from physical therapy, and advised to "maintain" with
24   Tylenol, home remedies, and exercise.  (AR 549, 550.)  Dr. Sorrentino
25   opined that her prognosis "for response to conservative measures as
26   concerns the low back is poor due to the underlying spondylolisthesis
27   of L5 on S1," which was exacerbated by the trauma of the car accident.
28   (AR 550.)

The records show that Plaintiff was not seen again for orthopedic treatment until December 14, 2000, when she returned to Dr. Moscarello.  On that occasion, Dr. Moscarello noted that her back has been "substantially worse" since the October 1999 accident and repeated his diagnosis of spondylolisthesis.  (AR 560.)  He opined that surgery would be unlikely to make any "dramatic change" in her condition, given her body weight, and prescribed Tylenol No. 3 and Neurontin.  (AR 560.)  On April 9, 2001, Dr. Moscarello changed Plaintiff's prescription to Celebrex after she complained that Tylenol No. 3 caused bleeding.  (AR 557.)

On May 14, 2001, Plaintiff reported to Dr. Moscarello that her left leg had not improved and that, after walking for three hours, her feet grew numb.  (AR 555.)  Dr. Moscarello opined that Plaintiff was disabled for six months--through November 14, 2001--due to low back pain and spondylolisthesis.  (AR 556.)  Though it looks as though appointments were scheduled in June and October 2001, Plaintiff did not return to Dr. Moscarello until January 2002, at which time she complained only of right hand pain.  (AR 552, 553-54.)  On March 13, 2002, however, Plaintiff complained to Dr. Moscarello of severe back pain.  (AR 551.)

On March 18, 2002, Plaintiff returned to Dr. Sorrentino, complaining of low back pain, numbness in her big toes, and a headache.  (AR 564.)  Though, apparently, he did not examine her during that visit, Dr. Sorrentino opined that Plaintiff "cannot bend, cannot lift, cannot vacuum.  She cannot stand for more than 4-5 minutes at a time.  She utilizes a cane in the right hand as she has a tendency for the leg to buckle," and he noted that her complaints described right carpal tunnel syndrome.  (AR 564.)  He concluded that

7

Plaintiff "certainly cannot do her previous occupation and should be retrained into lighter work, more of a sedentary occupation where she would be allowed to sit periodically as needed for increased pain," and noted that her "complaints and symptoms have not changed since her initial examination."  (AR 564.)

On September 26, 2002, Plaintiff was seen at Los Angeles County-USC Medical Center ("LAC-USC") with complaints of chronic back pain over the past four years that had worsened in the previous three days. (AR 812.)  The attending nurse practitioner noted lumbosacral tenderness but no joint swelling, and observed that Plaintiff walked with a steady gait.  (AR 812.)  On November 8, 2002, Plaintiff was diagnosed at LAC-USC with new onset diabetes mellitus, hypothyroidism, arthralgia, and hyperlipidemia.  (AR 810.)  She was prescribed Synthroid and Glyburide and referred to a nutritionist.  (AR 810.)  On January 28, 2003, Plaintiff returned to LAC-USC with complaints of foot pain, chest pain, and joint pain.  (AR 806.)  She was diagnosed with chest pain, possibly due to angina, diabetes mellitus, hypothyroidism, mild hyperlipidemia, and mild hypertension.  (AR 806.) Plaintiff was given various prescriptions and referred for an exercise stress test.  (AR 807.)

In July 2003, Plaintiff underwent surgery at Methodist Hospital for a bowel obstruction and incarcerated ileum, after presenting to the emergency room with lower abdominal pain, and no bowel movement and vomiting for several days.  (AR 698.)  She was diagnosed with noninsulin dependent diabetes mellitus, hypothyroidism, hyper-cholesterolemia, and morbid obesity and discharged in a stable condition.  (AR 698, 699.)

1   Plaintiff underwent surgery again in February 2004 after
2   experiencing severe pain in her upper abdomen for 24 hours.  (AR 614.)
3   She was hospitalized in March 2004 for ulcerative colitis and internal
4   hemorrhoids after suffering from rectal bleeding.  (AR 605-07, 610-
5   11.)  In March 2004, Dr. Jason Boutros opined that Plaintiff was
6   temporarily disabled from February 8, 2004, through December 1, 2004.
7   (AR 771.)

8   On October 26, 2004, though he had apparently not seen Plaintiff
9   since March 2002, Dr. Sorrentino completed a form report in which he
10  diagnosed her with degenerative disc disease of the cervical spine,
11  rotator cuff tendinitis, spondylolisthesis, right carpal tunnel
12  syndrome, and left ankle arthritis.  (AR 826-30.)  He opined that she
13  could stand for no longer than an hour, sit for no longer than five
14  hours, and walk for no longer than two hours in an eight-hour workday;
15  never bend, squat, kneel, crawl, climb, or reach above shoulder level;
16  and never lift or carry more than five pounds.  (AR 828, 829.)

17      C.   The ALJ's 2005 Decision

18  The ALJ determined that Plaintiff was impaired due to a history
19  of ventral hernia, new onset diabetes mellitus (in November 2002),
20  hypothyroidism, spondylolisthesis of the lumbosacral spine,
21  degenerative changes of the lumbosacral spine, history of gall bladder
22  surgery (in February 2004), and obesity, which were severe when
23  considered in combination.[3]  (AR 301.)  The ALJ found that the

24

25      [3]   In making this determination, the ALJ found that there was
26  insufficient evidence to establish that her other claimed ailments--
    small bowel obstruction; carpal tunnel syndrome; neck, shoulder, and
27  ankle pain; leg abrasion; blurry vision and vertigo; headaches; and
    cardiac condition--were severe impairments that lasted for at least
28  twelve consecutive months.  (AR 300-301.)  Plaintiff has not

impairments did not meet or equal a Listed impairment, whether considered alone or in combination.  (AR 302.)

After noting the varying residual functional capacity opinions in the record and discussing Plaintiff's medical history in some detail, the ALJ concluded that she retained the functional capacity to do light work up until January 1, 2004, which, under Medical-Vocational Rules 202.11 and 202.17, directed a finding that she was not disabled.[4]  (AR 306-08, 312-13.)  The ALJ determined, however, that, after January 1, 2004, Plaintiff was only able to perform sedentary work, which meant that she was disabled under Medical-Vocational Rule 201.09.  (AR 312-13.).

In determining that Plaintiff could perform light work for the period up to January 1, 2004, the ALJ relied on the opinions of reviewing physician Campbell and examining physician Fabella.  He rejected Dr. Sanchez's view that Plaintiff was "incapacitated" as a result of her spondylolisthesis and Dr. Sorrentino's opinion that she suffered from greater functional limitations.  (AR 307-08.)  The ALJ acknowledged that "Dr. Sorrentino's 1999 opinions may well describe [Plaintiff]'s condition shortly after her motor vehicle accident," but he found that "the evidence fails to establish that symptoms related to her October 1999 injuries persisted for twelve consecutive months." (AR 307, 308.)  The ALJ also noted Dr. Moscarello's May 2001 opinion

challenged this determination.

[4]  The ALJ determined that, before January 2004, Plaintiff "could lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk for about six out of eight hours, and also sit for six hours in an eight-hour workday; she could frequently climb, balance, kneel, crouch, and crawl, and she could occasionally crouch."  (AR 311.)

that Plaintiff was disabled for six months, but found that it did not establish disability for Social Security purposes because the period of disability was too short.  (AR 308.)  The ALJ concluded that there was "no evidence that [Plaintiff]'s symptoms changed significantly after the date of the consultative evaluation [in January 1999] and before January 2004[,]" but that internal problems, gall bladder surgery, and a diagnosis of colitis limited her to sedentary work after January 2004.  (AR 309.)

III. ANALYSIS

A.   <u>The Treating Physicians' Opinions</u>

Plaintiff contends that the ALJ did not properly consider the opinions of treating doctors Gary Moscarello, Frank Sorrentino, and Stephen Roberts.  (Joint Stip. at 24-28, 35-36.)  In particular, she contends that the ALJ improperly rejected: 1) Dr. Moscarello's March 19, 1999 report; 2) Dr. Sorrentino's November 29, 1999 examination findings and February 28, 2000 report; and 3) Dr. Roberts' records for the period October 1999 to February 2000.  (Joint Stip. at 24-27.) For the following reasons, the Court disagrees.

It is well established that an ALJ is required to discuss a treating doctor's opinion and that, even if it is contradicted by another doctor's opinion, he may only reject it for specific and legitimate reasons that are supported by substantial evidence.  *See, e.g., Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).  On the other hand, where the ALJ accepts a treating doctor's findings, he is not required to provide such reasons.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The ALJ accepted the functional limitations assessed by examining doctor Fabella and reviewing doctor Campbell as the baseline for what

11

1  Plaintiff could do before her car accident in October 1999.  (AR 302-
2  03, 308, 309.)  Dr. Fabella's opinion, which was based on his
3  independent examination findings, constituted substantial evidence to
4  support the ALJ's residual functional capacity determination.  *Andrews*
5  *v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (holding that, where
6  the opinion of a nontreating source is based on independent clinical
7  findings that differ from those of the treating physician, that
8  opinion constitutes substantial evidence).

9      As to the ALJ's analysis of Dr. Moscarello's March 1999 opinion,
10  the Court finds that it was adequate.  First, the ALJ evidently
11  accepted Dr. Moscarello's diagnosis of spondylolisthesis because he
12  found this to be one of her severe impairments, even while noting that
13  other evidence in the record, such as the MRI ordered by Dr.
14  Sorrentino, conflicted with this diagnosis.  (AR 299, 303-04.)
15  Additionally, as the ALJ reported, Dr. Moscarello noted Plaintiff's
16  complaints of back and thigh pain, but also stated that she walked and
17  sat down without discomfort and that she could walk on her heels and
18  toes.  (AR 233.)  Dr. Moscarello recommended weight loss and exercise
19  and ruled out surgery.  (AR 234.)  Nothing in Dr. Moscarello's March
20  1999 opinion established any greater functional limitations than those
21  found by the ALJ in his decision and, therefore, Plaintiff has failed
22  to show why the ALJ's treatment of the opinion requires remand.

23      As for Dr. Sorrentino's opinion, the ALJ gave several reasons why
24  he did not adopt the functional limitations found by Dr. Sorrentino in
25  1999, i.e., that Plaintiff would find even a sedentary job difficult,
26  and that she could stand for no longer than one hour and sit for no
27  longer than two hours.  (AR 228.)  First, the ALJ pointed out that
28  Plaintiff told Dr. Moscarello in May 2001 that her feet grew numb

after walking for three hours, which suggested that her condition had improved as she recovered from her October 1999 accident.  (AR 307.) This finding is supported by the record.  (AR 555.)

More generally, as mentioned above, the ALJ found that, though Dr. Sorrentino's 1999 reports might have accurately described Plaintiff's condition at that time, there was no evidence to establish that any limitations she was experiencing in November and December 1999, just a month or two after the accident, persisted at the same level for any period of at least 12 consecutive months thereafter. (AR 307.)  The ALJ noted that, "[f]or a time after the accident, [Plaintiff] received aggressive and intensive treatment" with Dr. Roberts and Dr. Sorrentino through February 2000.  (AR 303, 304.)  The ALJ contrasted this period of intensive treatment with a lack of any orthopedic treatment between February and December 2000, and with Plaintiff's lack of any treatment with Dr. Sorrentino between February 2000 and March 2002.  (AR 304, 307.)  This was a legitimate basis for declining to adopt Dr. Sorrentino's functional limitations for the entire period at issue.  *See*, *e.g.*, *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming ALJ's rejection of treating doctor's statement that claimant could not tolerate even sedentary work where record showed his condition subsequently improved).

Moreover, the ALJ noted Dr. Sorrentino's statement in October 2004 that the only treatment he had provided to Plaintiff was "physiotherapy originally and then Ibuprofen," which conservative treatment was inconsistent with the extreme limitations that Dr.

13

Sorrentino assessed.[5]   (AR 308, 827.)   In sum, to the extent that the ALJ rejected Dr. Sorrentino's view that Plaintiff was unable to do light work for any consecutive 12-month period after November 1999, the ALJ's reasons were specific and legitimate and supported by substantial evidence in the record.

Finally, with respect to Dr. Roberts, the ALJ noted his treatment findings between October 1999 and February 2000.   (AR 303.)   Though the ALJ did not specifically accept or reject these findings, but his failure to do so was not error.   Dr. Roberts did not express any opinion about Plaintiff's functional limitations in those notes. Furthermore, as previously discussed, the ALJ accepted that Plaintiff's condition in the months following her accident was poor, but found that it had improved sufficiently by February 2000 that she was released from physical therapy and did not need orthopedic treatment again until December 2000, at which time Dr. Moscarello again ruled out surgery and prescribed Tylenol.[6]   (AR 303-04.)

Although another factfinder might have drawn a different conclusion from Plaintiff's medical records, the ALJ's interpretation was not unreasonable.   Under the "highly deferential" standard of review applied here, the ALJ's decision must be upheld if it is

---

[5]   Additionally, the ALJ rejected Dr. Sorrentino's March 2002 functional capacity assessment because Dr. Sorrentino did not examine Plaintiff, but "merely repeat[ed] her subjective complaints[,]" and rejected his 2004 opinion in part because it was inconsistent with that of other examiners and also unsupported.   (AR 308.)   Plaintiff does not specifically challenge those findings here.

[6]   Similarly, the ALJ was not required to specifically accept or reject other treatment notes from Methodist Hospital and Woodfield Medical Group that did not include any diagnoses or functional limitations.

supported by substantial evidence and is based on a correct
application of the law. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574
F.3d 685, 690 (9th Cir. 2009).  Here, the ALJ set out a "detailed and
thorough summary of the facts and conflicting medical evidence,
stat[ed] his interpretation thereof, and ma[de] findings[,]" which
supported his partial rejection of the treating doctors' opinions.
*Orn*, 495 F.3d at 632.   Thus, there was no error.

B.   Plaintiff's Credibility

Plaintiff contends that the ALJ's finding that her "allegations
for the period before January 2004 are not fully credible," (AR 311),
was erroneous and not supported by substantial evidence in the record.
(Joint Stip. at 14-17.)  For the following reasons, this claim is
rejected.

ALJ's are tasked with judging the credibility of witnesses.
Where, as here, a claimant has produced objective medical evidence of
an impairment which could reasonably be expected to produce the
symptoms alleged and there is no evidence of malingering, the ALJ can
only reject the claimant's testimony for specific, clear, and
convincing reasons.  *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir.
1996).   In making a credibility determination, the ALJ may take into
account ordinary credibility evaluation techniques as well as a
claimant's inadequately explained failure to seek or follow a course
of treatment.  *Id*. at 1284.  If the ALJ's credibility finding is
supported by substantial evidence in the record, the Court may not
engage in second-guessing.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th
Cir. 2002).

The ALJ gave several reasons for finding that Plaintiff's pre-
2004 complaints were not fully credible.  First, the ALJ noted that

15

Plaintiff had denied experiencing previous back problems to Dr.
Sorrentino at her first meeting with him after the October 1999 car
accident, a statement that was plainly inconsistent with several other
records, including a lower-back pain complaint in January 1997, a
doctor's diagnosis of spondylolisthesis in 1998, Plaintiff's statement
that she had "18 months of pain in her lower back" in March 1999, and
Dr. Moscarello's report that Plaintiff complained of back pain prior
to the accident.  (AR 309.)  The ALJ found that Plaintiff "apparently
mischaracterized her history of back pain in order to accentuate
problems associated with the motor vehicle accident[,]" which reduced
her general credibility.  (AR 309.)  This was a proper basis for
questioning Plaintiff's credibility, *Smolen*, 80 F.3d at 1284, and is
supported by substantial evidence in the record.  (AR 159, 226, 541.)

Second, the ALJ found that Plaintiff's treatment history
undermined her allegations of disability.  (AR 310.)  He noted
significant gaps in her treatment history.  For example, despite Dr.
Sorrentino's findings that Plaintiff was severely limited in her
functioning, he did not see her between February 2000 and March 2002,
and March 2002 and October 2004.  (AR 304, 305, 550, 564, 826.)  Nor
did Plaintiff receive treatment for back or leg pain at any time
between May 2001 and March 2002, during at least part of which time
she was deemed disabled by Dr. Moscarello.  (AR 304, 552-55.)

Though the ALJ acknowledged that Plaintiff did not have medical
insurance during the relevant time period, he also noted that she was
able to access health care at county facilities and Methodist
Hospital.  (AR 310, 800-17.)  The record shows, for example, that
Plaintiff was seen for gynecological treatment at San Gabriel Valley
County Health Centers in September 2000.  (AR 820.)  Thus, the ALJ was

permitted to rely on the fact that Plaintiff failed to seek treatment for her alleged back and leg pain as a basis for questioning her credibility. *See Orn*, 495 F.3d at 638 ("[A]n unexplained, or inadequately explained, failure to seek treatment may be the basis for an adverse credibility finding unless one of a number of good reasons for not doing so applies.") (quotation omitted).

Additionally, the ALJ found that the treatment Plaintiff received was not commensurate with her alleged level of pain.  The ALJ noted that Dr. Sorrentino provided only physical therapy and Ibuprofen and LAC-USC provided only routine treatment until January 2004, findings which are also supported in the record.  (AR 310, 807, 827.) Moreover, the ALJ noted that Plaintiff missed a scheduled appointment in July 2003, failed to pick up prescriptions in July 2003 and January 2004, and failed to follow up with referrals for a nutritionist, an eye specialist, and a stress test.  (AR 310.)  Again, the record supports these findings and they are all legitimate reasons to question Plaintiff's testimony.  (AR 800, 802.)  *See Orn*, 495 F.3d at 638 ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.").[7] Because the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's pain testimony, all of which are supported by substantial evidence in the record, this claim does not warrant remand.

---

[7]   The ALJ also discounted Plaintiff's allegations in so far as they concerned her obesity.  (AR 310.)  Plaintiff has not challenged that aspect of his decision here.

C.   <u>Ability to Sustain Employment</u>

Plaintiff contends that the ALJ erred in failing to adequately determine whether she could work on a sustained basis prior to her date last insured.  (Joint Stip. at 36-38.)  She contends that the ALJ was required by Social Security Ruling ("SSR") 96-8p to evaluate whether she could do work activities on an "eight-hour a day for five-days a week basis" in light of her functional capacity and the evidence in the record.  (Joint Stip. at 37.)  This claim is also rejected.

SSR 96-8p provides that the ALJ "must include a narrative discussion describing how the evidence supports each conclusion . . . must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  In light of the ALJ's thorough and detailed discussion of the medical evidence, set forth above, the Court concludes that he met the requirements of SSR 96-8p in this case.

As discussed above, the ALJ based his residual functional capacity assessment of Plaintiff's condition before 2004 on the opinions of Dr. Fabella and Dr. Campbell.  (AR 308.)  Both Dr. Fabella and Dr. Campbell found that Plaintiff could stand and walk six hours in an eight-hour workday with normal breaks.  (AR 148, 151.)  And, as just discussed, the ALJ's rejection of the functional limitations set forth by Dr. Sorrentino was based on specific and legitimate reasons, which were supported by substantial evidence in the record.  Because

18

Plaintiff has not shown that the ALJ failed to heed the directives of SSR 96-8p, this claim does not require remand or reversal.

For all of the above reasons, the Agency's decision is affirmed.

IT IS SO ORDERED.

DATED:      November   13   , 2009.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-CLOSED\Closed-Soc Sec\HERNANDEZ, M 4043\Memo_Opinion.wpd